THIS OPINION IS A
PRECEDENT OF THE TTAB

Oral Hearing:                                          Mailed:
July 13, 2010                               February 25, 2011

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

Rocket Trademarks Pty Ltd.

v.

Phard S.p.A.

_____

Opposition No. 91172486
to application Serial No. 76519886
filed on June 5, 2003

_____

Duane M. Byers of Nixon & Vanderhye, P.C. for Rocket
Trademarks Pty Ltd.

Michael J. Striker for Phard S.p.A.

_____

Before Seeherman,[1] Grendel, and Wellington,
Administrative Trademark Judges.

Opinion by Wellington, Administrative Trademark Judge:

   Rocket Trademarks Pty Ltd. (hereinafter, "opposer"),

has opposed the application of Phard S.p.A. ("applicant"),

an Italian corporation, to register the following mark:

---

[1] Administrative Trademark Judge James T. Walsh participated in the oral hearing held before the Board on July 13, 2010. He has since retired from federal service. Therefore, Judge Ellen Seeherman has been substituted for Judge Walsh as a member of the panel deciding this case. The change in the composition of the panel does not necessitate a rehearing of the oral argument. _See, In re Bose_, 772 F.2d 866, 227 USPQ 1, 4 (Fed. Cir. 1985).



for the following goods:

> Printing paper, postcard paper, wrapping paper, writing and drawing paper, address and shipping adhesive labels, notebooks, memo paper, sketch books, coin, photograph and stamp albums, pencils, pens, crayons, pastels, rubber erasers, photograph mounts, photographs, magnetic blackboards, drawing paper, letter holders, writing tablets, calendars, diaries, and postcards in International Class 16;

> Leather and imitation leather sold in bulk; goods made of these materials, namely, bags, handbags, briefcases, suitcases, wallets, document cases, purses, trunks and traveling bags, animal skins and hides; umbrellas, parasols and walking sticks, whips, harness and saddlery in International Class 18; and

> Clothing, namely, jackets, shirts, coats, trousers, pullovers, ties, socks, stockings, gloves, scarves, hats, swimsuits, tracksuits, t-shirts, underwear, jeans, nightwear, shoes, boots, slippers and belts in International Class 25.[2]

As the ground for opposition to the registration of applicant's mark in all three classes of goods, opposer alleges that it (and its predecessor in interest and related companies) "has adopted and continuously used the term

---

[2] Application Serial No. 76519886, based on an Italian registration under Section 44(e). The application has been accorded a priority date of December 23, 2002, under Section 44(d), based on the date of filing of the application for the Italian registration.

ELEMENT as a trademark for goods in, inter alia, International Classes 16, 18, 25 and 28, and for services in International Class 35" and that such use has been "long prior to any date of first use upon which applicant can rely"; that it is the owner of ten registrations and one application for trademarks that include the term ELEMENT;[3] that opposer has successfully policed its marks; and that "applicant's trademark so resembles opposer's previously used, registered and applied for ELEMENT trademarks as to be likely, when used in connection with the goods set forth in applicant's application...to cause confusion, mistake or deception within the meaning of Section 2(d) of the Trademark Act." Opposer's pleaded registrations, which were made of record by submitting status and title copies via notice of reliance, include the following:

ELEMENT (in typed characters) for:
clothing, namely T-shirts, sweatshirts, sweatpants, pants, shorts, hats and caps in International Class 25, and sporting goods, namely skateboards and skateboard accessories, namely, wheels and trucks; and toys, namely, fingerboards in International Class 28;[4]

ELEMENT (in typed characters) for:
footwear, namely sport shoes in International Class 25;[5]

---

[3] The notice of opposition was amended pursuant to a motion granted by the Board on June 24, 2009. By way of the amendment, *inter alia*, opposer pleaded ownership of additional registrations.
[4] Registration No. 2641494, issued on October 29, 2002. Section 8 declaration accepted.
[5] Registration No. 3055790, issued on January 31, 2006.

ELEMENT (in typed characters) for:
bags, namely, beach bags, all-purpose sport bags,
carry bags, barrel bags, tote bags, waist packs,
backpacks, knapsacks, school bags, satchels,
shoulder bags, waist bags, clutch bags, hand bags,
cosmetic bags sold empty, jewelry bags for travel,
leather bags for packing merchandise, leather and
textile shopping bags, mesh shopping bags, wallets,
purses, clasps, cases, namely, travel cases,
overnight cases, briefcases, document cases, credit
card cases, business card cases, cosmetic cases,
toiletry cases and vanity cases sold empty, jewelry
cases of leather or textile, key cases and key
chains, travel goods in this class, namely, travel
bags, luggage trunks, luggage cases, luggage bags,
luggage tags and straps for luggage, umbrellas in
International Class 18;[6]

ELEMENT (in standard characters) for:
retailing and wholesaling services, namely, retail
and wholesale store services featuring cosmetics,
jewelry and watches, sunglasses and videos, luggage
and bags, wallets and purses, clothing, footwear,
headgear, and sporting goods; retail store outlets
featuring cosmetics, jewelry and watches, sunglasses
and videos, luggage and bags, wallets and purses,
clothing, footwear, headgear, and sporting goods;
customer loyalty services featuring loyalty card
programs; discount card schemes, namely,
administration of a discount program for enabling
participants to obtain discounts on goods and
services through the use of a discount membership
card; incentive schemes, namely, retail store
services in the field of cosmetics, jewelry and
watches, sunglasses, videos, luggage, bags, wallets,
purses, clothing, footwear, headgear and sporting
goods featuring a bonus incentive program for
customers; promoting the goods and services of
others by offering discounts on hotels, motels,
inns, resort accommodations; restaurants, car
rentals, tours, cruises, air fares, and tour
packages; business management and office work
services; providing information regarding discount
shopping services for shoppers, travelers, and
businesses; arranging and conducting marketing
promotional entertainment, sporting and cultural
events for others; franchising business services,
namely, services rendered by a franchise, namely,

---

[6] Registration No. 3190386, issued on January 2, 2007.

assisting in the running or management of a commercial enterprise in International Class 35;[7]

ELEMENTALITY (in standard characters) for, *inter alia*,:
paper, cardboard, and goods made from these materials, not included in other classes, namely, printed matter and printed publications; advertising and promotional materials; covers and inserts for records, tapes, compact discs, DVDs, CD-ROMs, films, video tapes; signs and signboards in this class; posters; stickers namely bumper stickers in International Class 16.[8]

In its answer, applicant denied all salient allegations in the notice of opposition.

The record includes the pleadings and the file of the opposed application, by operation of Trademark Rule 2.122(b)(1).

Opposer filed the deposition testimony transcripts of Mr. Johnny Travis Schillereff, President and founder of Element (a sister company of opposer and wholly-owned, along with opposer, by Australian company Billabong).[9]  During its testimony period, opposer also introduced, under notice of reliance, status and title copies of the pleaded

---

[7] Registration No. 3346567, issued on December 4, 2007.
[8] Registration No. 3512530, issued on October 7, 2008.
[9] Mr. Schillereff's deposition was taken during opposer's testimony period on June 2, 2009; a second deposition was taken during opposer's rebuttal testimony period on December 3, 2009. Transcripts thereof were filed with the Board.  Opposer did not attach copies of the deposition exhibits with the first deposition testimony transcript, but filed them separately under its notice of reliance.  The proper procedure for filing deposition exhibits is to attach them to the copy of the transcript being filed.  Opposer properly attached copies of the corresponding exhibits with the rebuttal testimony transcript of Mr. Schillereff.

registrations; copies of deposition exhibits[10]; printouts of search results from a website (www.yoox.com) for "ELEMENT branded goods" that purportedly include its own as well as applicant's goods; and copies of documents from the USPTO database that purportedly show opposer's efforts to police its trademarks. Under a second notice of reliance, filed during its rebuttal testimony period, opposer introduced additional copies of documents from a USPTO database that purportedly show opposer's efforts to police its trademarks; printouts from the USPTO TESS database purportedly "confirming the 'dead' status or dieing (sic) status of various third party trademark registrations...that were included in [applicant's exhibit submitted during its testimony period]"; and a copy of a registration that recently issued to opposer for the mark ELEMENT EDEN.

Applicant filed the deposition testimony, with exhibits, of Ms. Olga Fuchs, an office manager for the law firm representing applicant. The deposition exhibits include internet printouts pertaining to purported purchases made by Ms. Fuchs of goods sold under trademarks that include the term ELEMENT(S); photographs of goods that Ms. Fuchs states she purchased and that are sold under trademarks that include the term ELEMENT(S); and a list of third-party registrations, as well as certified copies of

---

[10] From Schillereff deposition taken on June 2, 2009.

the registrations, for marks that include the term ELEMENT.[11]

Opposer and applicant have filed trial briefs, and opposer filed a reply brief.

### Applicant's Evidentiary Objections

In its trial brief, applicant objected to various internet printouts that were introduced by opposer as exhibits to the Schillereff deposition.[12] Applicant contends that the printouts were not properly authenticated by Mr. Schillereff inasmuch as he did not have personal knowledge regarding when the printouts were accessed from the internet or who actually conducted the internet searches. Applicant furthermore argues that this is a 'substantive' objection and is thus properly raised for the first time in its trial brief.

We disagree with applicant's characterization of the objection as purely substantive; rather, we find that this objection is more procedural in nature and was not timely raised and has been waived. See TBMP § 707.03(c) (2d ed. rev. 2004); see also, *Mag Instrument, Inc. v. The Brinkmann Corporation*, 96 USPQ2d 1701 (TTAB 2010), citing *Pass &*

---

[11] Because these are third-party registrations, it was unnecessary to introduce them by providing title and status copies prepared by the USPTO. Plain copies from the USPTO's electronic database would have sufficed. Trademark Rule 2.122(e); see also TBMP § 704.03(b)(1)(B) (2d ed. rev. 2004).
[12] In particular, applicant objects to Schillereff Exhibits 4-11,15,23,25-39, and 45-37.

*Seymour, Inc. v. Syrelec,* 224 USPQ 845, 847 (TTAB 1984) (objection on grounds of improper authentication of exhibits waived). In any event, the Board has changed its practice regarding authentication of internet evidence, holding that a document obtained from the internet may be admitted into evidence pursuant to a notice of reliance in the same manner as a printed publication in general circulation, in accordance with Trademark Rule 2.122(d), so long as the date the internet document was accessed as well as its source (the internet address or URL) are provided and the party filing the notice of reliance indicates the general relevance of the document. *Safer, Inc. v. OMS Investments, Inc.*, 94 USPQ2d 1031 (TTAB 2010). Here, the documents were introduced as exhibits to Mr. Schillereff's deposition and they were submitted under a notice of reliance. The URL or internet address of the documents is visible on the documents and the date the documents were accessed is either provided in the notice of reliance or on the documents. Mr. Schillereff's testimony provides the relevance of such documents. Even had opposer not submitted the internet materials via notice of reliance, but only filed them as exhibits with the testimonial deposition of Mr. Schillereff (as it should have done, see footnote 8), the reasoning of the *Safer* decision is applicable. That is, so long as it possible to determine the source and date of retrieval for

8

the internet documents, and the witness testifies as to their general relevance, they may be introduced as testimony deposition exhibits even if the witness has not personally obtained or downloaded the documents.

In view of the above, applicant's objection to the exhibits on the ground that they have not been properly authenticated is overruled.

Applicant also moved to strike certain sections of opposer's trial brief wherein opposer argued that applicant "may have had intent" to cause confusion by filing the application and that actual confusion "may exist" based on recent trademark use by applicant. Applicant offers a cursory argument that the issues raised in these sections of opposer's brief were not pleaded by opposer and are thus "inappropriate...for this consideration in this proceeding." Brief, p. 8. We disagree with applicant that these paragraphs raise unpleaded issues. Rather, opposer pleaded a likelihood of confusion ground for opposition and the aforementioned issues are two possible factors that may be considered in a likelihood of confusion analysis. The Board is capable of weighing the relevance and strength or weakness of arguments presented in briefs; this precludes the need to "strike" arguments.

<u>Opposer's Evidentiary Objections</u>

Opposer has raised several objections involving the testimony of Olga Fuchs and the exhibits introduced by way of her testimony. First, opposer objects to the introduction of Fuchs Deposition Exhibits 1-34 (comprising third-party website materials, a list of registrations taken from the USPTO TESS database, and certified copies of third-party registrations) because these documents were not previously produced in response to opposer's discovery requests. Second, opposer objects to Ms. Fuchs' testimony because she testified that she lacked knowledge regarding the facts of this proceeding. Opposer also argues that Ms. Fuchs' testimony and exhibits lack relevance because they have a limited time frame and that certain exhibits (Exhibits Nos. 1, 19 and 25) pertain to or ultimately derive from foreign websites. Finally, opposer objects to Exhibits 30-32 and related testimony to the extent that they involve conversations between Ms. Fuchs and retailers and thus constitute hearsay.

Regarding opposer's objection to the exhibits on the basis that they were not previously produced in response to opposer's discovery requests, it is clear that the objected-to documents were obtained or created by applicant in anticipation of its testimony period and were not responsive documents that were already within its possession or control

10

when applicant was responding to document requests. As Ms. Fuchs testified, she was instructed by counsel for applicant (her employer) to conduct an "online search for the word 'element' with respect to clothing, luggage and paper, and to order products from located websites..." Fuchs dep. 4:24-5:3. She then found the information via the internet and printed out documents that comprise the exhibits or obtained the USPTO-certified copies of registrations.

A party need not investigate third-party use in response to discovery requests, *Sports Authority Michigan Inc. v. PC Authority Inc.*, 63 USPQ2d 1782, 1788 (TTAB 2001) (no obligation to search for third-party uses). Opposer's objection, in essence, is that it was somehow prejudiced by not having the documents produced earlier in response to its discovery requests. However, opposer was not put at a disadvantage. Again, applicant had no duty to conduct an investigation of third-party use during discovery and, certainly, applicant's attempt to present evidence of third-party use of the term ELEMENT should not have come as a surprise because it is common practice to introduce third-party use to demonstrate that a mark is weak and, therefore, entitled to only a narrow scope of protection.[13] The

---

[13] Under the Board's current rules, each party is required to make pretrial disclosures that will summarize the subjects on which a witness will testify and the exhibits that will be introduced during the testimony of that witness. However, this case was

documents introduced as exhibits to Ms. Fuchs' deposition were equally accessible to opposer, i.e., they were publicly available via the internet. Finally, opposer had thirty days between the close of applicant's testimony period and the opening of its rebuttal period to prepare any rebuttal against the evidence of third-party use. Accordingly, opposer's objection to the Fuchs' testimony deposition exhibits on the basis that the documents were not previously produced in response to opposer's discovery requests is overruled.

Opposer's objection that Ms. Fuchs lacked the requisite knowledge to testify in this proceeding is not well taken. We find that Ms. Fuchs was capable of testifying regarding the subject matter covered in her deposition. We also decline to strike any testimony or exhibits on the basis that it lacks relevance due to a limited time frame or because certain exhibits pertain to or ultimately derive from foreign websites. Nevertheless, we are cognizant of any limitations in the testimony and accompanying exhibits and have accorded the evidence the probative value it merits. That is, rather than striking any evidence, we consider the probative value of the evidence, and this includes any inherent limitations. For example, we agree

---

commenced prior to the Board's adoption of its current rules and the parties were not required to make pretrial disclosures.

with opposer that evidence of use of the term ELEMENT outside the United States has little to no relevance with regard to the issue of how the term is perceived by American consumers.

Finally, we sustain opposer's objection to Exhibits 30-32 and related testimony to the extent that applicant is offering these for the truth of the matter asserted in telephone conversations between Ms. Fuchs and employees of retail stores. Ms. Fuchs testified that certain items were for sale (or "in stock") at stores based on what she was told by the store employees, information that is clearly hearsay. *Cf. Anthony's Pizza & Pasta International, Inc. v. Anthony's Pizza Holding Company, Inc.*, 95 USPQ2d 1271 (TTAB 2005) (testimony regarding how third parties answered their telephones is not hearsay because deponent is merely testifying as to what she heard and not whether the statement is true or not). Accordingly, we strike as hearsay and give no consideration to any purported statements made by employees of the retail websites to Ms. Fuchs, and we also give no consideration to any handwritten notes to this effect made by Ms. Fuchs on the exhibits. We do not, however, exclude the exhibits outright inasmuch as they have been authenticated and, on their face, show that the public may have been exposed to those internet websites and therefore may be aware of the advertisements contained

13

therein. *See Life Zone Inc. v. Middleman Group Inc.*, 87 USPQ2d 1953, 1956 n.5 (TTAB 2003); *Sports Auth. Mich. Inc.*, 63 USPQ2d at 1798; and TBMP § 704.08 ("Even if properly made of record, however,... Internet printouts[] would only be probative of what they show on their face, not for the truth of the matters contained therein, unless a competent witness has testified to the truth of such matters.").

## Standing and Priority

Opposer has established its standing in this proceeding through its pleaded registrations, which are of record, for several marks that include the term ELEMENT. *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842 (Fed. Cir. 2000); *Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185 (CCPA 1982).

Also, because opposer's pleaded registrations are of record, Section 2(d) priority is not an issue in this case as to the marks and the goods covered by the registrations vis-à-vis applicant's mark and goods. *King Candy Company v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108 (CCPA 1974). To the extent necessary, we address the issue of opposer's common law priority of use in the discussion (to follow) regarding similarity of the parties' goods.

## Likelihood of Confusion

Our determination of the issue of likelihood of confusion is based on an analysis of all of the probative

facts in evidence that are relevant to the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). See also, *In re Majestic Distilling Co., Inc.*, 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003). And, although opposer relies on and has made of record approximately twelve registrations, we limit our analysis to the five registrations referenced at the beginning of this decision (as well as any common law rights) vis-à-vis applicant's proposed mark and the goods identified in the opposed application.[14]

1. Similarity of the Parties' Goods

We initially address the *du Pont* factor involving the similarity or dissimilarity of opposer's goods in relation to applicant's goods. In this regard, it is well-settled that when comparing the goods set out in an application and registrations, we are limited to the goods as they are identified and it is improper to import any extraneous limitations:

> [W]here the goods in a cited registration are broadly described and there are no limitations in the identification of goods as to their nature, type, channels of trade or classes of purchasers, it is presumed that the scope of the registration encompasses all goods of the nature and type described, that the

---

[14] We have selected these registrations on the basis that they are for marks and/or cover goods and services that, when considered vis-à-vis the applied-for mark and identified goods, are most likely to support a finding of likelihood of confusion. See, *e.g.*, *In re Max Capital Group Ltd.*, 93 USPQ2d 1243 (TTAB 2010). We note further that opposer has not pleaded or argued that it has a family of marks.

identified goods move in all channels of trade that would be normal for such goods, and that the goods would be purchased by all potential customers.

*In re Elbaum,* 211 USPQ 639, 640 (TTAB 1981), *citing Kalart Co., Inc. v. Camera-Mart, Inc.,* 119 USPQ 139 (CCPA 1958); see also, *Canadian Imperial Bank v. Wells Fargo Bank*, 811 F.2d 1490, 1 USPQ2d 1783 (Fed. Cir. 1992). Thus, where an identification of goods is broadly constructed, we must allow for all possible items that may fall within the identification. Inasmuch as opposer has opposed all three classes of goods in the subject application, we address the similarity of goods for each class, keeping in mind that a likelihood of confusion may be found with respect to a particular class based on any item within the identification of goods for that class. *Tuxedo Monopoly Inc. v. General Mills Fun Group,* 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981).

a. International Class 25

Applicant "readily agrees that there is a definite overlap of goods" with registrant's various articles of clothing covered by the registered ELEMENT mark. Brief, p. 27. A cursory review of the goods identified in the subject application with those covered by opposer's registered ELEMENT mark confirms there are several identical or overlapping items, e.g., t-shirts (or "shirts"), hats, shoes, and tracksuits (or sweatpants and sweatshirts).

16

There is no question that the parties' goods identified in Class 25 are legally identical in part.

b.  International Class 16

Applicant asserts that opposer "simply failed to show any meaningful use of its mark in this class at all." However, as previously referenced, opposer is the owner of the registered mark ELEMENTALITY for goods in International Class 16.  This registration includes the broad term "printed matter [made of paper and cardboard]" and therefore encompasses several of applicant's more specifically-identified goods such as "calendars" and "postcards." Opposer has also demonstrated prior common law use of the mark ELEMENT with respect to "stickers" and "decals."[15]  Mr. Schillereff testified that opposer has been selling stickers and decals bearing the mark ELEMENT continuously since 1991. Schillereff dep. 38:18-39:2.  Mr. Schillereff elaborated that applicant's sales of these stickers and decals do not "compete" with the sales of opposer's other goods, but that the stickers were "a huge marketing component of the company because we use them to market the brand and give away, I would almost say, the majority for free."  Schillereff dep.

---

[15] In its brief, opposer asserts common law rights with respect to "insignia, badges, patches, pictures/posters, and books," in addition to "decals and stickers."  Brief, p. 39 (citing to "Fact 22" for support).  However, Fact 22 of opposer's brief references evidence (the Schillereff testimony) pertaining to use of the mark on "decals" and "stickers" only.

41:14-21.  However, despite any common law rights opposer may have in the mark for stickers and decals, the record does not support a relationship between opposer's decals and stickers and any of the goods identified in the subject application.  Although applicant's "address and shipping adhesive labels" may be similar in physical form to opposer's decals and stickers, the respective goods are considerably different in nature and serve very different purposes.  Applicant's labels are for shipping and opposer's stickers and decals are, as Mr. Schillereff explained, a "marketing component" for opposer.

    c.  International Class 18

Opposer has registered the ELEMENT mark for goods that overlap with or are encompassed by the goods listed in the subject application.  Specifically, the subject application covers "bags" (made of leather and imitation leather) and this encompasses many of the goods listed in opposer's ELEMENT registrations, *i.e.*, "school bags, all-purpose sport bags, carry bags, barrel bags, tote bags,...school bags, satchels, shoulder bags, waist bags, clutch bags, hand bags, cosmetic bags sold empty...leather and textile shopping bags, mesh shopping bags, [and]...travel bags."  Even where they do not overlap or encompass one another, many of the parties' goods, as identified, are closely related, e.g., applicant's "purses" and opposer's "clutch bags."

d.  Conclusion

Opposer's registered mark, ELEMENT, covers goods that, in part, are legally identical to the goods listed in International Classes 18 and 25 of the application.

Opposer has not demonstrated that it has rights (either common law or through its registrations) in the mark ELEMENT for goods related to those identified in International Class 16 of the subject application.  Opposer's registered mark, ELEMENTALITY, on the other hand, identifies goods that, in part, are legally identical to those listed in International Class 16 of the application.

2.  Trade Channels and Classes of Purchasers

As already noted, in the absence of any restrictions or limitations in opposer's registrations and the subject application, we must assume the identified goods are sold through all the normal and usual trade channels for such goods to all the usual purchasers of such goods.  See *Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 62 USPQ2d 1001 (Fed. Cir. 2002); and *Octocom Systems Inc. v. Houston Computers Services Inc.*, 918 F.2d 937, 16 USPQ2d 1783 (Fed. Cir. 1987).  Accordingly, where we have found that the parties' goods are overlapping and/or identical, we must presume that those same goods would be found in the same channels of trade and be subject to purchase by the same class(es) of consumers.

19

3.   The Marks

We now turn to the *du Pont* factor concerning the similarity or dissimilarity of the marks when viewed in their entireties in terms of appearance, sound, connotation and commercial impression.  *See Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005).

Here, the obvious single similarity between the parties' respective marks is that they share the term ELEMENT in one form or another.  Specifically, opposer has registered the marks ELEMENT and ELEMENTALITY, and applicant's mark



includes the term ELEMENTS.

Despite sharing an ELEMENT-formative term, we find the parties' marks, overall, to be dissimilar.  This is mainly due to the dominant role of the term ZU in applicant's mark. The term ZU appears significantly larger and very prominently above the smaller font-sized ELEMENTS.[16]  ZU

---

[16] Opposer has introduced evidence attempting to show that applicant uses a mark wherein the terms "ZU" and "ELEMENTS" appear together in a uniformly-sized font.  However, for purposes of this proceeding and in determining the issue of likelihood of confusion, we are only concerned with applicant's proposed mark

20

visually dominates applicant's mark and, consequently, is the term that will most likely be impressed in the minds of consumers.

As to sound, applicant's mark will clearly be pronounced differently as it begins with the term ZU. This term differentiates the mark from opposer's marks, even though pronunciation of the term ELEMENTS in applicant's mark is nearly identical to opposer's ELEMENT mark, and has some similarity in sound to the ELEMENTALITY mark to the extent that the first three syllables are the same.

As to any connotation or commercial meaning conveyed by the parties' marks, applicant states that the term ZU is a "coined fanciful term" and there is nothing in the record to contradict this assertion. However, because ZU can be pronounced like the word "zoo" consumers may attribute a connotation based on the meaning of that word and, viewing the mark in its entirety, ZU ELEMENTS, it could have the connotation of things pertaining to a zoo. With regard to the shared term, ELEMENT(S), applicant argues that it "conjures up an image of the outdoors" and is somewhat suggestive because "clothing, after all, protects one from the elements." Brief, p. 22. Opposer, on the other hand, argues that its ELEMENT mark is "meant to connote a

---

for which it seeks registration, namely, as shown on the drawing page of the application.

21

contemporary, lifestyle, fashionable brand" and that consumers will understand both parties' marks as having that connotation. Brief, p. 37.

The term "element" has several defined meanings, including:

> 1. A fundamental, essential, or irreducible constituent of a composite entity.
> 2. elements The basic assumptions or principles of a subject.
> ...
> 5. One of four substances, earth, air, fire, or water, formerly regarded as a fundamental constituent of the universe.
> ...
> 7. elements The forces that constitute the weather, especially severe or inclement weather: *outside paint that had been damaged by the elements.*
> 8. An environment naturally suited to or associated with an individual: *He is in his element when traveling. The business world is her element...*[17]

Applicant has submitted numerous third-party registrations and some evidence of third-party use of marks incorporating the term ELEMENT(S) in connection with clothing. Depending on its context, the term ELEMENTS may be understood as evoking one or more of the above-defined meanings in relation to clothing. For example, the record demonstrates that several third parties have adopted marks that incorporate the term "elements" in a manner suggestive

---

[17] The American Heritage Dictionary of the English Language, Fourth Edition copyright 2000 by Houghton Mifflin Company (updated in 2009). The Board may take judicial notice of dictionary definitions. *University of Notre Dame du Lac v. J. C. Gourmet Food Imports Co., Inc.*, 213 USPQ 594 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

of their clothing items' ability to protect from the weather.[18] Also, applicant has submitted at least twelve third-party registrations for ELEMENTS marks in which the word is used in a manner similar to that in applicant's mark.[19] That so many third parties have adopted marks that include the term ELEMENTS indicates that the term has some measurable significance in the clothing industry along the lines of the term's first defined meaning, as in "essential" clothing items or the "fundamentals" for apparel or one's wardrobe. While these registrations are not evidence that said marks are in actual use, their existence indicates the term ELEMENTS may be recognized as having some significance for apparel. *Tektronix, Inc. v. Daktronics, Inc.,* 187 USPQ 588, 592 (TTAB 1975) (the third-party registrations may be considered in the same manner as a dictionary to show a possible meaning or significance in a particular trade). The fact that the USPTO has allowed so many registrations

---

[18] Registrations nos.: 3463408 (ELEMENTS ALL WEATHER CONDITIONS for coats), 2734510 (AGAINST THE ELEMENTS for "men's clothing"), and 2809782 (BRAVE THE ELEMENTS for "jackets, pants, hats, gloves and boots...").

[19] Registrations nos.: 1457558 (BASIC ELEMENTS for "shirts, t-shirts, pants, jackets and shorts"), 2056080 (CLASSIC ELEMENTS for clothing), 2919619 (GRACE ELEMENTS for variety of women's clothing), 2751429 (REI E1 ELEMENTS for clothing), 2174608 (ELEMENTS OF STYLE for clothing), 1540635 (BASIC OPTIONS BY BASIC ELEMENTS for "men's shirts"), 3165719 (DESIGN ELEMENTS BY DONNA DEGNAN for clothing), 1761466 (PRIME ELEMENTS, "elements" disclaimed, for "men's and women's clothing"), 2715253 (NATURAL ELEMENTS BY DIANE GILMAN for "women's wearing apparel"), 2988792 (DS ELEMENTS stylized for wide variety of apparel), 2031210 (BOSTONIAN ELEMENTS for footwear), and 3189562 (UNITED ELEMENTS stylized for various articles of clothing).

containing a shared term may be used "to establish that [the] portion common to the marks involved in a proceeding has a normally understood and well-known meaning [and] that this has been recognized by the [USPTO]...; and that therefore the inclusion of [the shared term] in each mark may be an insufficient basis on which to predicate a holding of confusing similarity." *Red Carpet Corp. v. Johnstown American Enterprises Inc.*, 7 USPQ2d 1404, 1406 (TTAB 1988).

The circumstances of this case are akin to those in *Knight Textile Corp. v. Jones Investment Co.,* 75 USPQ2d 1313 (TTAB 2005). In *Knight Textile*, the applicant was allowed to register the mark NORTON MCNAUGHTON ESSENTIALS in the face of an opposition filed by the owner of the mark ESSENTIALS for, in part, identical items of clothing. The Board found that the registered mark (*i.e.,* the shared term) was "highly suggestive as applied to the parties' [clothing]" and that applicant's addition of its house mark sufficed to distinguish the marks. *Id.* at 1315. In this case, there are a significant number of registrations indicating that the shared term ELEMENTS likewise has a suggestive connotation in connection with clothing. And, while the degree of suggestiveness of ELEMENTS may not reach the level of the shared term in the *Knight Textile* case, it does detract from the notion that consumers would be confused simply because of applicant's use of the term

24

ELEMENTS in its mark.  In other words, purchasers viewing applicant's mark on clothing are likely to focus on the larger, more prominent and more distinctive term, ZU, while attributing a meaning to the latter, smaller term ELEMENTS that it is suggestive of apparel items that are "essential" or "fundamental" to a wardrobe.  We hasten to add that we find a degree of suggestiveness in the term ELEMENTS only in connection with clothing; we make no such finding with regard to the other goods in International Classes 16 and 18.  Nevertheless, even without a finding of suggestiveness with regard to the Class 16 and 18 items, the inclusion of ZU in applicant's mark, with the different appearance, pronunciation and connotation it gives to the mark, is sufficient to distinguish applicant's mark from opposer's mark.

In sum, we find that this *du Pont* factor weighs in favor of applicant and against finding a likelihood of confusion.  Although applicant's mark practically incorporates opposer's ELEMENT mark, the term ZU dominates applicant's mark and is very different from opposer's marks. With respect to opposer's ELEMENTALITY mark vis-à-vis applicant's mark, we find even less in common and this factor accordingly weighs in favor of applicant and against finding a likelihood of confusion.

4.  Extent of Third-Party Use of Similar Marks

The sixth *du Pont* factor requires consideration of any evidence pertaining to the number and nature of similar marks in use on similar goods.  Our primary reviewing court, the Federal Circuit, has stated that "[e]vidence of third-party use of similar marks on similar goods is relevant to show that a mark is relatively weak and entitled to only a narrow scope of protection."  *Palm Bay Imports Inc.,* 73 USPQ2d at 1693, citing, *General Mills, Inc. v. Kellogg Co.,* 824 F.2d 622, 626-27 (8th Cir. 1987); and J. Thomas McCarthy, 2 *McCarthy on Trademarks and Unfair Competition* § 11:88 (4th ed. 2001).

After careful consideration of the entire record before us, we find that there is a degree of weakness in the term ELEMENT(S), when used as a trademark, or as a component part thereof, in connection with clothing items.  The testimony, with exhibits, of Ms. Fuchs shows that other entities have used the term ELEMENT(S) (either alone or in conjunction with other terms) on various clothing items.[20]  For example, Ms. Fuchs testified that she was able to purchase a women's skirt being sold under the brand GRACE ELEMENTS from the

---

[20] Ms. Fuchs also testified regarding a few purchases she made with respect to non-clothing goods, *e.g.*, bags, rolling papers, etc., being sold under ELEMENT-formative marks.  The very limited number of such third-party ELEMENT-branded goods does not rise to a level necessary to show weakness of the term ELEMENT in connection with said non-clothing goods.

Boscov's online retail store,[21] a pair of BROOKS ELEMENT running shorts,[22] a FIFTH ELEMENT T-shirt from the REI online retail store,[23] CLASSIC ELEMENTS women's 2-piece knit pajamas from the Sears online retail store,[24] and a LIVESTRONG ELEMENT women's sports (running) jacket from the Nike online retail store.[25] In addition, Ms. Fuchs testified that she was able to purchase shirts from online retail stores named ELEMENT ECOWEAR[26], BTC ELEMENTS,[27] and THE GREEN ELEMENT.[28]

Despite any limitations in the probative value of this evidence, there are so many usages that we cannot dismiss them as de minimis; rather, they tend to show that consumers are able to distinguish among ELEMENT(S) marks based on other terms in the marks. We agree with opposer that the internet search and the purchases were conducted within a short period of time and do not indicate any length of time the marks have been in use. Moreover, there is no indication as to the volume of sales for any of the purchased items nor level of exposure to the relevant purchasing public. *See Penguin Books Ltd. v. Eberhard*, 48 USPQ2d 1280, 1284 n.5 (TTAB 1998) (white pages listings do

---

[21] Fuchs dep. 16:12-20, Exhibit 10.
[22] Fuchs dep. 11:16-20, Exhibit 5.
[23] Fuchs dep. 25:17-21, Exhibit 18.
[24] Fuchs dep. 20:5-14, Exhibit 14.
[25] Fuchs dep. 24:1-25:3, Exhibit 17.
[26] Fuchs dep. 34:3-15, Exhibit 26.
[27] Fuchs dep. 28:8-12, Exhibit 21.

not show that the public is aware of the companies); *but see In re Broadway Chicken Inc.,* 38 USPQ2d 1559, 1565 n.16 (TTAB 1996) ("the magnitude of applicant's evidentiary record is such that even allowing for these possibilities [some of the entities are out of business, are small enterprises, are in remote locations, or have reached only a miniscule portion of the relevant public], there is still a significant body of evidence of third-party use").  Although the items purchased from third-party websites do not rise to the level of the evidence in *In re Broadway Chicken Inc.*, the number is significant enough that we regard the public as having at least some exposure to other marks containing the term ELEMENT(S).

Accordingly, we find, because of the suggestiveness of ELEMENT(S) and the third-party use of this term in connection with clothing items, the mere fact that the parties' marks both contain the term ELEMENT(S) is not a sufficient basis on which to find likelihood of confusion. This *du Pont* factor favors applicant with respect to its goods in Class 25.

5. Fame of Opposer's Mark(s)

When fame is present it plays a dominant role in the determination of likelihood of confusion.  See *Bose Corp. v. QSC Audio Products Inc.*, 293 F.3d 1367, 63 USPQ2d 1303, 1305

---

[28] Fuchs dep. 29:6-12, Exhibit 22.

(Fed. Cir. 2002); *Recot Inc. v. M.C. Becton*, 214 F.3d 1322, 54 USPQ2d 1894, 1897 (Fed. Cir. 2000); *Kenner Parker Toys, Inc. v. Rose Art Industries, Inc.*, 963 F.2d 350, 22 USPQ2d 1453, 1456 (Fed. Cir. 1992). However, it is the duty of a party asserting that its mark is famous to clearly prove it. *Leading Jewelers Guild Inc. v. LJOW Holdings LLC*, 82 USPQ2d 1901, 1904 (TTAB 2007).

In its main brief, opposer asserts that its ELEMENT mark is "well known" and has "acquired and posess[es] a favorable reputation reflected in a substantial amount of goodwill," with regard to "clothing, bags and paper goods." Brief, p. 41. It is in its reply brief that opposer first claims that its ELEMENT-formative trademarks are "famous in its business area," which it defines as "contemporary, relevant fashion clothing and related goods." Reply, p. 9. Inasmuch as opposer asserts that its mark is "famous" for the first time in its reply brief and this issue was not raised by applicant in its brief, it is improper rebuttal argument. See TBMP § 801.03(2d ed. rev. 2004) (The plaintiff's reply brief "must be confined to rebutting the defendant's brief").

Even if we were to construe opposer's arguments in its main brief as asserting fame, opposer has not established that its ELEMENT mark (or any one of its other ELEMENT-formative marks) is famous. Opposer primarily relies on the

Schillereff testimony and evidence regarding use of its ELEMENT mark since 1991, as well as annual sales figures and approximate advertising expenditures for goods sold under its mark.[29] Although the sales and advertising numbers appear impressive on their face, opposer has offered no context for these figures. That is, it is nearly impossible to gauge the level of success of goods bearing the mark or the degree of exposure the general public has had to the mark. The extent to which consumers have been exposed to opposer's goods under its marks vis-à-vis sales of its competitors' goods remains unknown, and thus it is not possible to determine whether opposer's evidence of financial success translates into fame of its pleaded marks. Ultimately, opposer's evidence falls short of establishing that its ELEMENT mark, or any of its other marks, is famous. See *Leading Jewelers Guild Inc.*, 82 USPQ2d at 1904.

Accordingly, this *du Pont* factor is neutral.

6.   Other *du Pont* Factors

Several other *du Pont* factors were argued by the parties. We find that either the parties failed to submit sufficient evidence to substantiate the arguments or the

---

[29] The portions of Mr. Schillereff's testimony in this regard were designated "confidential." We have, of course, considered all evidence of record, but are mindful of the portions designated as "confidential" and thus refer to such materials in only general terms.

30

factors simply remain neutral in our likelihood of confusion analysis.

In particular, we note opposer's reliance on materials obtained from the third-party retail website www.yoox.com that purportedly "indicate[] that the retailer is confused by the parties' products or is creating confusion." Brief, p. 14. Opposer likens this to an instance of actual confusion. We disagree with this conclusion. First, applicant's mark, as applied for, is not the same as that displayed on the website. Second, there is no indication that any confusion is present; rather, it appears that a search on the website retrieved different branded clothing items, including applicant's and opposer's goods. This evidence is more relevant to a finding involving the similarity of the trade channels of the parties' clothing goods – which we have already found, for purposes of this decision, to be the same.

Balancing of the *du Pont* Factors -- Conclusion

We readily acknowledge that several of the factors relevant to our ultimate determination weigh in favor of finding a likelihood of confusion. We have found that opposer has prior rights in the mark ELEMENT on goods that are identical, in part, to those in the subject application for International Classes 18 and 25; and that opposer has prior rights in the mark ELEMENTALITY on goods that

encompass certain goods in International Class 16 of the subject application. We have further noted that we must assume, where the goods are identical or encompass one another, the trade channels and classes of purchases are the same. However, outweighing the aforementioned findings is the factor involving the dissimilarity of the parties' marks, combined with the suggestive nature and weakness of the term ELEMENT(S), as used in connection with clothing. The dominance and arbitrary nature of the term ZU in applicant's mark and the overall dissimilarity of the parties' respective marks prevents the likelihood of confusion. We are mindful that applicant's mark contains the term ELEMENTS, nearly identical to one of opposer's marks, but when consumers view applicant's mark they will focus much less on the term ELEMENTS because it appears below the coined term ZU and in much smaller font size and, with respect to clothing, has some suggestive meaning. The term ELEMENT(S) is also used by several third parties in connection with clothing items, indicating that consumers are able to distinguish between various ELEMENT(S) marks based on other terms in the marks. Ultimately, we find, based on a preponderance of the evidence, that there is not a likelihood of confusion between any of opposer's pleaded marks and applicant's mark, ZU ELEMENTS.

**Decision**:  The opposition is dismissed as to each of the three classes.