This Opinion Is a
Precedent of the TTAB

Mailed: November 17, 2021

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re Taverna Izakaya LLC*

————

Serial No. 88612441

————

Nicholas S. Kuhlmann and Alexandria M. Mueller of Hellmuth & Johnson,
for Taverna Izakaya LLC.

Timothy Schimpf, Trademark Examining Attorney, Law Office 130,
John Lincoski, Managing Attorney.

————

Before Greenbaum, Adlin, and Lynch,
Administrative Trademark Judges.

Opinion by Lynch, Administrative Trademark Judge:

## I.  Background and Evidentiary Matter

Taverna Izakaya LLC ("Applicant") seeks registration on the Principal Register

of the mark TAVERNA COSTERA in standard characters for "restaurant, cafe, and

bar services" in International Class 43.[1] The application includes a statement in the Translation field ("The English translation of TAVERNA COSTERA in the mark is COASTAL TAVERN"), along with a Miscellaneous Statement ("the word TAVERNA is Greek and Italian, while the word COSTERA is Spanish").[2]

The Trademark Examining Attorney applied the doctrine of foreign equivalents and refused registration of Applicant's mark under Trademark Act Section 2(e)(1), 15 U.S.C. § 1052(e)(1), as merely descriptive of the identified services. Once the Trademark Examining Attorney made the refusal final, Applicant requested reconsideration and appealed. After the Examining Attorney denied the request for reconsideration, the appeal resumed, and has been fully briefed.

As explained more fully below, while TAVERNA COSTERA as a whole is not merely descriptive, the TAVERNA component of the mark is unregistrable and must be disclaimed.

Before turning to the merits, we sustain the Examining Attorney's objection to a declaration from Applicant's attorney, through which Applicant submitted email correspondence with the Examining Attorney to schedule a telephone interview.[3] The declaration and exhibits were filed contemporaneously with Applicant's Brief, after Applicant appealed, and Applicant cites them to establish that a telephone

---

[1] Application Serial No. 88612441 has a filing date of September 11, 2019, and is based on Applicant's assertion of a bona fide intent to use the mark in commerce under Trademark Act Section 1(b), 15 U.S.C. § 1051(b).

[2] TSDR September 11, 2019 Application at 1. TSDR refers to the USPTO's Trademark Status & Document Retrieval, the online electronic file for the application.

[3] 7 TTABVUE 1-4 (Kuhlmann Declaration). TTABVUE refers to the Board's online proceeding database. The docket entry number precedes the TTABVUE designation and page numbers, if applicable, follow the designation.

interview occurred during prosecution and that "[b]ased on the interview, Applicant's counsel believed the pending descriptiveness rejection would be withdrawn."[4]

The record in an application should be complete before the filing of an appeal, pursuant to Trademark Rule 2.142(d). 37 C.F.R. § 2.142(d); *see In re tapio GmbH*, 2020 USPQ2d 11387 (TTAB 2020) (excluding, inter alia, a declaration from the applicant's attorney submitted with the brief); TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE ("TBMP") § 1207.01 (2021). Any request to supplement the record thereafter must be addressed through a separately filed and captioned written request to the Board for a remand to introduce additional evidence based on good cause. 37 C.F.R. § 2.142(d); TBMP § 1209.04. Therefore, we decline to consider these materials that are not part of the prosecution record.

In any event, the excluded materials have no probative value. Pursuant to Trademark Rule 2.191, "[a]ll business with the Office must be transacted in writing. The action of the Office will be based exclusively on the written record. No consideration will be given to any alleged oral promise, stipulation, or understanding when there is disagreement or doubt." 37 C.F.R. § 2.191. The written Office actions are controlling, rather than the content of the telephone interview. *See* TRADEMARK MANUAL OF EXAMINING PROCEDURE ("TMEP") § 709.03 (July 2021)

---

[4] 6 TTABVUE 5.

("If there is any disagreement between the examining attorney and the applicant as to the substance of the interview, the written record governs.").[5]

## II. Mere Descriptiveness under the Doctrine of Foreign Equivalents

In the absence of acquired distinctiveness, Section 2(e)(1) of the Trademark Act precludes registration on the Principal Register of "a mark which, (1) when used on or in connection with the [services] of the applicant is merely descriptive . . . of them." 15 U.S.C. § 1052(e)(1). A term is merely descriptive within the meaning of the statute "if it immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used." *In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012) (quoting *In re Bayer AG*, 488 F.3d 960, 82 USPQ2d 1828, 1831 (Fed. Cir. 2007)); *see also In re TriVita, Inc.*, 783 F.3d 872, 114 USPQ2d 1574, 1575 (Fed. Cir. 2015).

Descriptiveness must be assessed "in relation to the particular [services] for which registration is sought, the context in which it is being used, and the possible significance that the term would have to the average purchaser of the [services] because of the manner of its use or intended use." *Bayer AG*, 82 USPQ2d at 1831 (citing *In re Abcor Dev. Corp.*, 588 F.2d 811, 200 USPQ 215, 218 (CCPA 1978)). The descriptiveness analysis concentrates on the recitation of services in the application. *See In re Cordua Rests., Inc.*, 823 F.3d 594, 118 USPQ2d 1632, 1636 (Fed. Cir. 2016)

---

[5] The TMEP provides that promptly following any interview, the substance of it should be recorded as an examiner's amendment or priority action, if appropriate, or in a note to the file reflecting "a list of the issues discussed" and "whether any agreement was reached." TMEP § 709.03. The record in this case contains no such written account of the interview.

(citing *Octocom Sys., Inc. v. Houston Comput. Servs., Inc.*, 918 F.2d 937, 16 USQP2d 1783, 1787 (Fed. Cir. 1990)).

The Examining Attorney contends that the wording in the mark translates to "coastal tavern," which conveys that Applicant's restaurant, café and bar services feature fresh seafood, also known as "coastal cuisine."[6] As support, the Examining Attorney submitted Internet evidence showing descriptive use in the restaurant industry of "coastal cuisine" and "coastal tavern."[7] For example, the Blue Turtle refers to itself as "a classic coastal tavern," and The Pines refers to itself as "A Modern Coastal Tavern."[8] The Post House calls itself "a coastal tavern and inn."[9] A blog post on a restaurant refers to "The Turtle Club & Claw Bar, a successful coastal tavern seafood restaurant along Florida's famed Gulf Coast."[10] The Examining Attorney also submitted third-party registration evidence reflecting disclaimers of "coastal" and "taverna" for the same or similar services.[11]

Applicant does not dispute the descriptiveness of "coastal tavern" in relation to restaurants, but emphasizes that its mark is TAVERNA COSTERA. Applicant complains that "[t]he Examining Attorney spent much of the various Office Actions

---

[6] 9 TTABVUE 4 (Examining Attorney's Brief).

[7] *E.g.*, 4 TTABVUE 53-93, 98-102 (February 2, 2021 Denial of Reconsideration); TSDR December 19, 2019 Office Action at 6-10.

[8] TSDR December 19, 2019 Office Action at 7, 9.

[9] TSDR July 13, 2020 Office Action at 33.

[10] TSDR July 13, 2020 Office Action at 34.

[11] 4 TTABVUE 13-52 (February 2, 2021 Denial of Reconsideration).

acting as though Applicant had applied for the mark COASTAL TAVERN. It has not."[12]

"Under the doctrine of foreign equivalents, foreign words from common, modern languages are translated into English to determine … descriptiveness…. When it is unlikely that an American buyer will translate the foreign mark and will take it as it is, then the doctrine of foreign equivalents will not be applied." *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1696 (Fed. Cir. 2005) (citing *In re Tia Maria, Inc.*, 188 USPQ 524 (TTAB 1975) (no likelihood of confusion between TIA MARIA for a Mexican restaurant and AUNT MARY'S for canned vegetables)); *In re Thomas*, 79 USPQ2d 1021, 1024 (TTAB 2006).

The doctrine of foreign equivalents "is not an absolute rule and should be viewed merely as a guideline" that applies when it is likely that "the ordinary American purchaser would 'stop and translate [the mark] into its English equivalent.'" *Palm Bay*, 73 USPQ2d at 1696 (quoting *In re Pan Tex Hotel Corp.*, 190 USPQ 109, 110 (TTAB 1976)). Such "ordinary American purchaser" in a case involving a foreign language mark includes purchasers knowledgeable in English as well as the pertinent foreign language(s). *See Thomas*, 79 USPQ2d at 1024 ("The 'ordinary American purchaser' in this context refers to the ordinary American purchaser who is knowledgeable in the foreign language"); *see also In re La Peregrina Ltd.*, 86 USPQ2d 1645, 1647-48 (TTAB 2008) ("The Board has determined that the 'ordinary

---

[12] 6 TTABVUE 8 (Applicant's Brief).

American purchaser' in a case involving a foreign language mark refers to the ordinary American purchaser who is knowledgeable in English as well as the pertinent foreign language.").

The crux of the disputed descriptiveness refusal in this case lies in whether to apply the doctrine of foreign equivalents to Applicant's mark and, more particularly, whether consumers would "stop and translate" TAVERNA COSTERA to the descriptive term "coastal tavern," or instead would take the mark "as it is." The mark presents an unusual scenario as a polyglot in which the evidence of record indicates that the two words in the mark TAVERNA COSTERA come from different languages, and Applicant and the Examining Attorney disagree over what languages are involved.

As detailed below, the evidence shows that the mark may consist of an English word (TAVERNA) coupled with a Spanish word (COSTERA), or may consist of a Greek transliteration (TAVERNA) or Italian word (TAVERNA) coupled with a Spanish word (COSTERA). Ultimately, both Applicant and the Examining Attorney agree that the mark consists of the combination of words from different languages.

The Examining Attorney takes the following position:

> According to the evidence of record, applicant's provided translation is accurate because TAVERNA has meaning in Italian and Greek as "tavern." See December 19, 2019 Office action, TSDR at 8-11. Additionally, according to the American Heritage Dictionary, the term "taverna" has also entered English as a loan word and is defined as "A café or small restaurant serving Greek food." See December 19, 2019 Office action, TSDR at 6-7. Applicant's provided translation is also accurate that the term COSTERA has meaning in Spanish as "coastal." See

> December 19, 2019 Office action, TSDR at 12-13. This evidence of record supports applicant's translation of TAVERNA COSTERA as "COASTAL TAVERN".[13]

He further maintains, without evidentiary support, that "[i]n this case, the ordinary American purchaser would likely stop and translate the mark in the manner identified by applicant because Spanish, Italian, and Greek languages are common, modern languages spoken by an appreciable number of consumers in the United States."[14]

In the translation and miscellaneous statements in its initial application, Applicant states that COSTERA is Spanish for "coastal," and TAVERNA is Greek and Italian for "tavern." In briefing, Applicant states that "[t]he word TAVERNA is Greek."[15] According to Applicant, the ordinary American purchaser would not be conversant in multiple foreign languages, and therefore could not stop and translate this mark. Moreover, even assuming for purposes of argument that TAVERNA is an English language word:

---

[13] 9 TTABVUE 5 (Examining Attorney's Brief).

[14] 9 TTABVUE 5 (Examining Attorney's Brief). As Applicant has pointed out, the Examining Attorney did not submit supporting evidence for the proposition that these languages are common and modern, and spoken by an appreciable number of consumers in the United States. *See* TMEP § 1207.01(b)(vi)(B) (July 2021) (in applying the doctrine of foreign equivalents in the Trademark Act Section 2(d) context, "an examining attorney should provide evidence to show that the foreign language is a common, modern language. The type of evidence will vary depending on the particular facts of the case but, if available, the examining attorney should provide evidence of the percentage or number of United States consumers who speak the language in question."); *see, e.g.*, *Thomas*, 79 USPQ2d at 1024 (current census data relied on to show that French is a common, modern language). Applicant contends that "the lack of legal authority or evidentiary support… standing alone merit reversal of the refusal." 6 TTABVUE 11 (Applicant's Brief). However, the issue is moot because the doctrine of foreign equivalents does not apply, as explained below.

[15] 10 TTABVUE 4 (Applicant's Reply Brief).

> Since the first word is understood in English, it is exceedingly likely that the average consumer would simply finish reading the second word of the Mark as it is perceived to an English speaker, without stopping to translate the word COSTERA (particularly since the Spanish word COSTERA is pronounceable in English).[16]

Essentially, Applicant maintains that the doctrine of foreign equivalents should not be applied to its mark, where consumers would read the mark "as it is," rather than translating it. *See Palm Bay*, 73 USPQ2d at 1696 ("When it is unlikely that an American buyer will translate [a] foreign mark and will take it as it is, then the doctrine of foreign equivalents will not be applied.").

In the context of this mark, we find it appropriate to treat "taverna" as an English word. The record includes the American Heritage Dictionary definition of "taverna" as a "café or small restaurant serving Greek food,"[17] and third-party registrations with disclaimers of "taverna."[18] Five of the third-party registrations disclaiming "taverna" do not translate the term,[19] while five of them translate it.[20] We also take judicial notice of entries for "taverna" in other English language dictionaries – Merriam-Webster defines it as "a café in Greece" and Oxford (U.S. English) defines it as "[a] small Greek restaurant or café."[21] We find that consumers

---

[16] 6 TTABVUE 11 (Applicant's Brief).

[17] TSDR December 19, 2019 Office Action at 2.

[18] TSDR July 13, 2020 Office Action at 3-9, 12, 18, 20.

[19] TSDR July 13, 2020 Office Action at 6, 9, 12, 18.

[20] TSDR July 13, 2020 Office Action at 3-5, 7-8, 20.

[21] The entries from merriam-webster.com and lexico.com (from Oxford), respectively, were accessed on October 12, 2021. The Board may take judicial notice of definitions from dictionaries, including online dictionaries that exist in printed format or have regular fixed editions. *E.g.*, *In re S. Malhotra & Co. AG*, 128 USPQ2d 1100, 1104 n.9 (TTAB 2018).

would recognize "taverna" as an English language word – a variation of the word "tavern" that refers to a tavern featuring Greek food.

Given that ordinary consumers would recognize the first word in Applicant's mark not only as an English word – but one that connotes a Greek café and Greek cuisine – those consumers would not be inclined to stop and translate the next word in the mark from Spanish. Indeed, the record makes clear that the application's "translation" statement is not in fact a literal and direct "translation," as commonly understood, from a particular foreign language into English; rather, it is an attempt to fit the square peg of a multi-language mark into the round hole of the "translation" in the application form.

Courts and the Board frequently have found that consumers would not "stop and translate" marks comprised of terms in multiple languages, often finding that the marks combine the different languages for suggestive purposes to create a certain commercial impression. For example, in *In re Universal Package Corp.*, the Board declined to apply the doctrine of foreign equivalents and held that the mark LE CASE for jewelry boxes was not merely descriptive as a whole, noting "[h]ere only one of the two components is foreign. Translation of an entire compound word mark is more likely to take place in the marketplace than is the translation of only part of the mark." 222 USPQ 344, 347 (TTAB 1984). Similarly, in *In re Sweet Victory, Inc.*, the Board held that "the combination of a foreign word 'GLACÉ' and the English word 'LITE' is not merely descriptive under Section 2(e)(1)" because "the

juxtaposition of the French word 'GLACÉ with the English word 'LITE' changes the commercial impression of the mark." 228 USPQ 959, 960-61 (TTAB 1986).

Because the evidence of record does not support a finding that consumers would stop and translate the two different-language words comprising the TAVERNA COSTERA mark and instead would perceive the mark as it is, we decline to apply the doctrine of foreign equivalents.[22] The mark as a whole is not descriptive and at most it suggests, through the use of this particular combination of words from multiple languages, a "fusion" of cuisines. *See Estate of P.D. Beckwith, Inc. v. Comm'r of Patents*, 252 U.S. 538, 545-546 (1920) ("The commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail. For this reason it should be considered in its entirety …."); *see also Universal Package*, 222 USPQ at 347 (use of the French article LE with the English word CASE changes the mark's commercial impression, and "imparts to the mark a French flavor, a continental connotation which is presumably desirable from the perspective of manufacturers of jewelry boxes").

Nonetheless, as explained above, TAVERNA is a recognized English language word that refers to a type of restaurant. Therefore, because this component of the mark is unregistrable, we affirm the refusal to register in the absence of a

---

[22] We hasten to add that our determination rests on the particular facts of this case, and the situation could differ with another multi-language mark or a different evidentiary record. For example, some foreign words resemble their English language counterparts so closely that even consumers unfamiliar with the foreign language understand the word and its meaning. *See, e.g., Bayer A.G.*, 82 USPQ2d at 1831 (affirming the Board's finding that the foreign word ASPIRINA and English word aspirin are sufficiently close in appearance, sound, and meaning that "[t]he mere addition of the letter 'A' at the end of the generic term 'aspirin' is simply insufficient to transform ASPIRINA into an inherently distinctive mark for analgesics").

disclaimer of TAVERNA. *See In re Haden*, 2019 USPQ2d 467424, at \*1, \*19 (TTAB 2019) (proposed mark as a whole not generic, but affirming refusal to register unless the applicant submits a disclaimer of the component deemed unregistrable); *In re Country Music Ass'n Inc.*, 100 USPQ2d 1824, 1835 (TTAB 2011) ("COUNTRY MUSIC ASSOCIATION as a whole is not generic; however, the word ASSOCIATION is. Accordingly, we affirm the refusal to the extent that the mark may not be registered without a disclaimer of ASSOCIATION").

**Decision**: While the mark as a whole is not merely descriptive, the TAVERNA component of the mark is unregistrable. Thus, we affirm the refusal to register Applicant's mark to the extent that it may not be registered without a disclaimer of TAVERNA. However, if Applicant submits a properly worded disclaimer of TAVERNA to the Board within 30 days from the date of this decision and prior to filing any appeal of this decision, the refusal will be set aside and the application will proceed. *See* 37 C.F.R. § 2.142(g). The appropriate standardized disclaimer text is as follows:

> No claim is made to the exclusive right to use "TAVERNA" apart from the mark as shown.